# IN THE UNITED STATES DISTRICT COURT
# FOR THE WESTERN DISTRICT OF NORTH CAROLINA
# STATESVILLE DIVISION
# CIVIL ACTION NO. 5:20-CV-00179

| | |
|---|---|
| MARY SIGMON,<br><br>**Plaintiff,**<br><br>v.<br><br>**DON BROWN, SHERIFF OF CATAWBA COUNTY**, in his official capacity, **MICHAEL LEE SPEAGLE**, in his Official Capacity as Deputy Sheriff Catawba County, **ADAM TAYLOR STOUT**, in his Official Capacity as Deputy Sheriff Catawba County,<br><br>**Defendants.** | **ORDER** |

**THIS MATTER** is before the Court on the Motion to Dismiss filed by Defendants, (Doc. No. 17) ("Motion"), on January 25, 2021. Defendants seek dismissal on the grounds that the Court lacks personal jurisdiction over Defendants Speagle and Stout and that Plaintiff's Amended Complaint has failed to state a claim upon which relief can be granted. The Court has carefully considered the motion, the parties' memoranda, and Plaintiff's Amended Complaint. For the reasons discussed below, the Court will **GRANT IN PART** and **DENY IN PART** the Motion to Dismiss. The Court will dismiss without prejudice all of the claims against Defendants Speagle and Stout in their official capacity as duplicative of the official capacity claims against Sheriff Brown. Also, the Court will dismiss Plaintiff's claim under § 1983 based on a failure to train and her claim for negligent infliction of emotional distress. Plaintiff will be permitted to proceed on her remaining claims, but will not be permitted to recover punitive damages.

1

## I. RELEVANT BACKGROUND

For purposes of this motion, the Court accepts as true all well-pled facts and draws all reasonable inferences in Plaintiff's favor. Accordingly, the following version of the facts, much of which is disputed or not accepted by Defendants in their Answer (Doc. No. 19), is drawn solely from the Amended Complaint (Doc. No. 14).

On or about July 22, 2017, Mary Sigmon ("Plaintiff"), was at home, praying and speaking with friends on the telephone when she heard a knock at her front door. (Doc. No. 14, ¶¶ 9, 10). When she opened the front door, she was confronted by Defendants Deputy Michael Lee Speagle and Deputy Adam Taylor Stout ("Deputies") from the Catawba County Sheriff's Department. *Id.* at ¶ 11. The Deputies had received a call to check on Plaintiff and believed Plaintiff to be suicidal. *Id.* at ¶¶ 12, 22. Plaintiff immediately informed the Deputies that she was fine. *Id.* at ¶ 12.

The Deputies then entered Plaintiff's private residence without Plaintiff's consent or invitation. *Id.* Once inside the residence, the Deputies informed Plaintiff that she needed to accompany them to the hospital. *Id.* Plaintiff refused. *Id.* She alleges that the Deputies told her that they would handcuff her and force her to accompany them to the hospital if she did not go willingly. *Id.* After this exchange, Plaintiff claims the Deputies watched her dress herself and use the restroom. *Id.* She then began crying and begging the Deputies to leave her private residence. *Id.* at ¶ 14. Plaintiff was then transported to the hospital. *Id.* at ¶ 13.[1]

Plaintiff originally filed this action in the North Carolina Superior Court for Catawba County in July 2020 and Defendants removed the action to this Court on November 9, 2020. On January

---

[1] It appears from the face of the Amended Complaint that Plaintiff alleges that the deputies transported Plaintiff to the hospital against her will. However, in the briefing on the Motion to Dismiss, both parties indicate that EMS, not the Deputies, transported her to the hospital. (Doc. Nos. 18, at 8; 20, at 9).

11, 2021, Plaintiff filed an Amended Complaint alleging seven claims against the Sheriff of Catawba County Don Brown and Deputies Speagle and Stout, only in their official capacities. She titled her claims as follows: (1) "Invasion of Privacy by Intrusion into Seclusion Under Color of Law"; (2) "Violation of Procedural Due Process"; (3) "Negligent Infliction of Emotional Distress Under C[o]lor of Law"; (4) "Intentional Infliction of Emotional Distress Under Color of Law"; (5) "Trespass Under Color of Law"; (6) "Civil Assault Under Color of Law"; and (7) "Deprivation of Civil Rights, 42 U.S.C. § 1983." Plaintiff seeks monetary relief for actual, special, and punitive damages in excess of $25,000 for each count. *Id.* at ¶ 37.

Defendants contend that Plaintiff's Amended Complaint should be dismissed on multiple grounds. First, Defendants argue that this Court lacks personal jurisdiction as to Defendants Speagle and Stout due to improper service of process. Second, Defendants assert that Plaintiff has failed to state a claim upon which relief can be granted.

## II.  LEGAL STANDARD

### A. Service of Process & Personal Jurisdiction

A motion to dismiss under Rule 12(b)(5) challenges the sufficiency of service of process, which is "fundamental to any procedural imposition on a named defendant." *Murphy Bros., Inc. v. Michetti Pipe Stringing, Inc.*, 526 U.S. 344, 350 (1999). Absent waiver of service of process or consent, a plaintiff's failure to effect proper service of process deprives the court of personal jurisdiction over a defendant. *See, e.g., Koehler v. Dodwell*, 152 F.3d 304, 306 (4th Cir. 1998). A plaintiff has the burden to show that she effected service of process properly and that the court has personal jurisdiction over all defendants. *See Scott v. Md. State Dep't of Labor*, 673 F. App'x 299, 304 (4th Cir. 2016) (per curiam). "The real purpose of service of process is to give notice to the defendant, and mere technicalities should not stand in the way of consideration of a

case on its merits." *Id.* at 304 (brackets, internal citations, and quotation marks omitted). "'Actual notice,' however, is not the controlling standard." *Id.* Although courts typically liberally construe rules governing service of process when the defendant receives actual notice, the rules "'are there to be followed, and plain requirements may not be ignored.'" *Id.* (ellipses omitted) (quoting *Armco, Inc. v. Penrod-Stauffer Bldg. Sys., Inc.*, 733 F.2d 1087, 1089 (4th Cir. 1984)).

### B. Failure to State a Claim

Under Federal Rule of Civil Procedure 8(a)(2), a complaint must contain "a short and plain statement of the claim showing that the pleader is entitled to relief." Fed. R. Civ. P. 8(a)(2). However, "Rule 8(a)(2) still requires a 'showing,' rather than a blanket assertion, of entitlement to relief." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 n.3 (2007).

A motion to dismiss under Federal Rule of Civil Procedure 12(b)(6) for "failure to state a claim upon which relief can be granted" tests whether the complaint is legally and factually sufficient. *See* Fed. R. Civ. P. 12(b)(6); *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009); *Bell Atlantic Corp.*, 550 U.S. at 570; *Coleman v. Maryland Court of Appeals*, 626 F.3d 187, 190 (4th Cir. 2010), *aff'd sub nom. Coleman v. Court of Appeals of Maryland*, 566 U.S. 30 (2012). In evaluating whether a claim is stated, "[the] court accepts all well-pled facts as true and construes these facts in the light most favorable to the plaintiff," but does not consider "legal conclusions, elements of a cause of action, . . . bare assertions devoid of further factual enhancement[,] . . . unwarranted inferences, unreasonable conclusions, or arguments." *Nemet Chevrolet, Ltd. v. Consumeraffairs.com, Inc.*, 591 F.3d 250, 255 (4th Cir. 2009). Construing the facts in this manner, a complaint must only contain "sufficient factual matter, accepted as true, to state a claim to relief that is plausible on its face." *Id.* (internal quotations omitted). Thus, a motion to dismiss under Rule 12(b)(6) determines only whether a claim is stated; "it does not resolve contests surrounding the facts, the merits of a

claim, or the applicability of defenses." *Republican Party of North Carolina v. Martin*, 980 F.2d 943, 952 (4th Cir. 1992).

### III.  DISCUSSION

#### A. Personal Jurisdiction and Service of Process

Defendants Speagle and Stout first move to dismiss Plaintiff's Amended Complaint under Rules 12(b)(2) and 12(b)(5) of the Federal Rules of Civil Procedure. Defendants argue Plaintiff failed to serve them in compliance with Federal Rule 4(e) and North Carolina General Statute § 162-16, which Defendants Speagle and Stout assert is the exclusive means to effectuate service of process upon a sheriff and his deputies under North Carolina law. Deputies Speagle and Stout also argue they should be dismissed from the case as the claims against them in their official capacity are duplicative of the claims against Sheriff Brown. (Doc. No. 18, at 6, 18).

To properly effect service of process, Federal Rule of Civil Procedure 4(e) allows for service of a summons and complaint on an individual by:

> (1) following state law for serving a summons in an action brought in courts of general jurisdiction in the state where the district court is located or where service is made; or
>
> (2) doing any of the following:
>
>> (A) delivering a copy of the summons and of the complaint to the individual personally;
>>
>> (B) leaving a copy of each at the individual's dwelling or usual place of abode with someone of suitable age and discretion who resides there; or
>>
>> (C) delivering a copy of each to an agent authorized by appointment or by law to receive service of process.

F.R.C.P. 4(e). North Carolina law, in turn, requires that where a party to be served is a sheriff, service of summons must be effected by the county coroner, or, if the county has no coroner, by

the clerk of court or the clerk's designee. N.C. Gen. Stat. § 162-16; *see also Webb v. Price*, 708 S.E.2d 94, 95 (N.C. 2011); *Goodwin v. Furr*, 25 F. Supp. 2d 713, 718 (M.D.N.C. 1998).

Defendants argue that § 162-16 is the "exclusive means to effectuate personal service of process upon a sheriff and his deputies." (Doc. No. 18, at 18). While Defendants are correct that § 162-16 is the exclusive means *under North Carolina law* to effectuate personal service upon a sheriff and his deputies and that such service was not effectuated here, Rule 4(e) of the Federal Rules also allows "an individual . . . [to be] served" by "delivering a copy of each [summons and complaint] to an agent authorized by appointment or by law to receive service of process." Fed. R. Civ. P. 4(e). Here, the process server attempted to serve the summons and Amended Complaint on Deputies Speagle and Stout while they were at work. (Doc. No. 20-1, ¶ 6). However, when the process server called to ask if Speagle and Stout were in the office, he was informed that it was the "official policy" of the Catawba County Sheriff's Office that all summons and complaints on deputies in their official capacity be left with Lieutenant Eric C. Page. *Id.* ¶ 7. The process server then personally delivered the Summons and Amended Complaint to Lieutenant Eric C. Page. *Id.* ¶¶ 8-9).[2] Accordingly, the Court finds that Plaintiff has proffered enough evidence of properly effected service to survive Defendants' initial jurisdictional challenge. *See Grayson v. Anderson*, 816 F.3d 262, 268 (4th Cir. 2016) ("[W]hen the court addresses the personal jurisdiction question by reviewing only the parties' motion papers, affidavits attached to the motion, supporting legal memoranda, and the allegations in the complaint, a plaintiff need only make a prima facie showing of personal jurisdiction to survive the jurisdictional challenge.").

---

[2] Defendants dispute that Lieutenant Page was the authorized agent of Deputies Speagle and Stout, but offer nothing other than a conclusory assertion. Notably, Defendants do not respond to Plaintiff's argument in their Reply, but merely argue that even if Deputies Speagle and Stout were properly served, Plaintiff's claims against them should still be dismissed on other grounds.

Nevertheless, Deputies Speagle and Stout should be dismissed from the case as Plaintiff's claims against them are duplicative of the claims against Sheriff Brown in his official capacity. "[W]here the governmental entity may be held liable for damages resulting from its official policy, a suit naming public officers in their official capacity is redundant." *Moore v. City of Creedmoor*, 481 S.E.2d 14, 17 (N.C. 1997) (citing *Kentucky v. Graham*, 473 U.S. 159, 166, 87 L. Ed. 2d 114, 121 (1985)). Deputies Speagle and Stout are sued *only* in their official capacities; therefore, the claims against them are essentially suits against Sheriff Don Brown and the Catawba County Sheriff's Office, the governmental agency they represent. *See Graham*, 473 U.S. at 165-66. Thus, the Court will dismiss the official capacity claims against Defendants Speagle and Stout, without prejudice, as duplicative.

**B. 42 U.S.C. § 1983 Claim**

The Court now turns to determine whether Plaintiff's allegations are sufficient to state a § 1983 claim against the Sheriff's department. For a plaintiff's § 1983 claim to survive a 12(b)(6) motion to dismiss for failure to state a claim, she must successfully plead two elements: (1) that the defendants acted under color of state law and (2) that the plaintiff suffered a deprivation of a constitutional or federal statutory right as a result of that action. *Davis v. Durham Mental Health Developmental Disabilities Substance Abuse Area Auth.*, 320 F. Supp. 2d 378, 403 (M.D.N.C. 2004). Defendants assert Plaintiff has insufficiently pled (1) that she suffered a deprivation of a constitutional or statutory right, and (2) an official policy or custom caused any of her alleged constitutional deprivations.

The Fourth Amendment guards the "right of people to be secure in their persons . . . against unreasonable searches and seizure" and provides that "no Warrants shall issue, but upon probable cause." U.S. Const. amend. IV. Plaintiff alleges that she suffered a deprivation of her constitutional

rights when the Deputies entered her home without permission, remained in her home after requesting they leave, and forced her to go to the hospital against her will.[3] Defendants first argue that there was no constitutional violation because "Plaintiff voluntarily opened the door," indicating "Plaintiff consented to the Sheriff's Deputies' presence on her property." (Doc. No. 18, at 8). However, the Amended Complaint clearly alleges that while Plaintiff did open the door, she "immediately informed the Defendants, Deputy Sheriffs, that she was fine" and that the Deputies "then proceeded to enter the Plaintiff's private residence without the consent or invitation of the Plaintiff." (Doc. No. 14, ¶ 12).

Defendants next argue that the "emergency-as-exigency" exception applies to the Deputies' entry, resulting in no Fourth Amendment violation. The "emergency-as-exigency" exception permits what would otherwise be an illegal entry when there is the need to protect life or avoid serious injury. *United States v. Taylor*, 624 F.3d 626, 631 (4th Cir. 2010). Indeed, Defendants assert in their Answer to the Amended Complaint that the Deputies responded to a welfare check requested by Plaintiff's daughter due to a suicidal Facebook post Plaintiff made saying that she was going to kill herself and telling everyone goodbye. (Doc. No. 19, ¶ 10). Defendants also state that they knocked on the doors and windows of Plaintiff's home for several minutes before she voluntarily answered the front door. *Id.* While Defendants may succeed on this defense later in the case if these allegations are proven to be true, on a motion to dismiss the Court must accept as true all well-pled facts in the Amended Complaint and make all reasonable inferences in Plaintiff's favor. According to the Amended Complaint, Plaintiff "immediately informed" the Deputies "that

---

[3] In one place in the Amended Complaint, Plaintiff alleges her rights under the Twenty-Third Amendment were violated. (Doc. No. 14, ¶ 24). She wisely abandons this claim in her briefing, as the Twenty-Third Amendment allows the District of Columbia to be considered a State with respect to presidential elections and is irrelevant to the case at hand.

she was fine" after they informed her that they had received a call to check on her. (Doc. No. 14, ¶ 12). Nevertheless, the Deputies proceeded to enter Plaintiff's home without consent or a warrant. She also claims she began "crying and begging the Defendant, Deputy Sheriffs, to leave her private residence," but they refused to do so. *Id.* ¶ 14. And, finally, she claims that she was eventually coerced into being taken to the hospital against her will. *Id.* ¶ 13(e). Taking these allegations as true, the Court cannot determine that the "emergency-as-exigency" exception applies and dismiss Plaintiff's § 1983 claims on such ground. *See Martin*, 980 F.2d at 952 (noting that a motion to dismiss under 12(b)(6) should not resolve the applicability of defenses).

As for the second element of her § 1983 claim, Plaintiff alleges the Deputies acted in accordance with an official policy of the Sheriff's office. "[A] local government may not be sued under § 1983 for an injury inflicted solely by its employees or agents." *Id.* at 694. "[I]t is when execution of a government's policy or custom, whether made by its lawmakers or by those whose edicts or acts may fairly be said to represent official policy, inflicts the injury that the government as an entity is responsible under § 1983." *Id.* There are four ways in which a municipality may be held liable for one of their policies or customs:

> (1) through an express policy, such as a written ordinance or regulation; (2) through the decisions of a person with final policymaking authority; (3) through an omission, such as a failure to properly train officers, that "manifest[s] deliberate indifference to the rights of citizens"; or (4) through a practice that is so "persistent and widespread" as to constitute a "custom or usage with the force of law."

*Lytle v. Doyle*, 326 F.3d 463, 471 (4th Cir. 2003) (quoting *Carter v. Morris*, 164 F.3d 215, 217 (4th Cir. 1999). Plaintiff alleges that Sheriff Brown failed to properly train his deputies and that the actions of the Deputies taken at Plaintiff's home are so "persistent and widespread" as to constitute a "custom or usage with the force of law."

As for Plaintiff's allegation that Sheriff Brown failed to properly train his deputies, the Court agrees with Defendants that such allegation is unsupported and nothing more than a threadbare recital of an element of a § 1983 claim. Plaintiff has not identified what training was allegedly insufficient, much less why such training was insufficient and how it caused Plaintiff's alleged constitutional deprivation. Allowing Plaintiff to move forward with this allegation would permit her to continue with a claim having made only a blanket assertion without any factual enhancement. Indeed, if simply stating that any alleged misconduct by a public officer is the result of a failure to train is sufficient to support a claim under §1983 then there is effectively no pleading requirement beyond simply reciting the elements of the cause of action, which is plainly insufficient. Accordingly, the Court will dismiss Plaintiff's failure-to-train portion of her § 1983 claim and will do so without prejudice.

The Court does, however, find that Plaintiff has sufficiently pled a claim under § 1983 based on her allegation that the Deputies' practice at Plaintiff's home (i.e., entering her home without permission, watching her, and forcing her to be transported to the hospital against her will after a welfare call) is a practice that is so "persistent and widespread" as to constitute a "custom or usage with the force of law." Plaintiff states twice in her Amended Complaint that "[u]pon information and belief, the actions of Defendant, Deputy Sheriffs, which occurred with the Plaintiff are practiced upon 'every suicidal subject encountered while on duty.'" (Doc. No. 14, ¶¶ 49, 94). This allegation differs from Plaintiff's allegation regarding failure-to-train in two ways. First, unlike Plaintiff's failure-to-train allegation, the Court can draw a reasonable inference from the facts alleged in the Amended Complaint that the Deputies' actions are a "persistent and widespread" practice in the Catawba County Sheriff's Office. For instance, it is not unreasonable to infer that deputies receiving a call indicating a person is suicidal are required to enter the person's home

and/or transport him or her to the hospital. Second, Plaintiff has little to no way of knowing how the Sheriff's Office handles suicide or welfare checks on a regular basis without proceeding to discovery, especially given the confidential and sensitive nature of the subject matter. At this stage, all Plaintiff has is her "information and belief" and the reasonable inferences the Court can draw. Shortly into the discovery period, Plaintiff may well realize that she has been misinformed and her belief as to a persistent and widespread policy is incorrect, which would presumably end this matter.[4] Nevertheless, given the unique facts of this case and the available inferences that can be drawn at this earliest stage of the case, the Court finds that Plaintiff has sufficiently pled a § 1983 claim to survive Defendants' Motion to Dismiss.

**C. State Tort Claims**

Defendants move to dismiss all of Plaintiff's state tort claims for failure to state a claim under 12(b)(6). The Court declines to dismiss Plaintiff's claims for invasion of privacy, intentional infliction of emotional distress, trespass, and civil assault. It will, however, dismiss Plaintiff's claim for negligent infliction of emotional distress.

To state a claim for negligent infliction of emotional distress, a plaintiff must allege that (1) the defendant negligently engaged in conduct, (2) it was reasonably foreseeable that such conduct would cause the plaintiff severe emotional distress, and (3) the conduct did in fact cause the plaintiff severe emotional distress. *See, e.g.*, *Bailey v. Long*, 90 S.E. 809 (1916); *Green v. Telegraph Co.*, 49 S.E. 165 (1904). In the Amended Complaint, Plaintiff has only alleged that the

---

[4] The Court's holding in this matter is strictly limited to the particular facts and circumstances alleged here. The Court need not and does not decide whether pleading simply upon one's "information and belief" is enough to survive a motion to dismiss with respect to any other allegation of a widespread government policy or practice in the context of a claim under § 1983.

Defendants engaged in intentional conduct; therefore, her claim for negligent infliction of emotional distress will be dismissed without prejudice.

**D. Punitive Damages**

Lastly, Defendants move to dismiss Plaintiff's claim for punitive damages, citing to a number of cases holding that punitive damages are not recoverable from Sheriffs and Sheriff Deputies in their official capacities. (Doc. No. 18, at 16) ("*See Houpe v. City of Statesville*, 128 N.C. App. 334, 497 S.E.2d 82, 93 (1998) (holding that a claim against a police chief in his official capacity is essentially a claim against the city, and as such, a plaintiff may not seek punitive damages from the police chief in his official capacity for violations of state law); *see also Blair v. Cnty. of Davidson*, No. 1;05CV00011, 2006 WL 1367420, at *13 (M.D.N.C. May 10, 2006) (dismissing punitive damages against Sheriff and Sheriff Deputies in their official capacities); *Brewington v. Bedsole*, No. 91-120-CIV-3-H, 1993 WL 819885, at *30 (E.D.N.C. May 14, 1993) (dismissing punitive damages claims against a Sheriff in his official capacity)."). Plaintiff does not respond to this argument in her opposition brief. Accordingly, the Court will grant Defendants motion to dismiss Plaintiff's claim for punitive damages.

## I. ORDER

**IT IS THEREFORE ORDERED** that Defendants' Motion to Dismiss, (Doc. No. 17), is **GRANTED IN PART** and **DENIED IN PART**. The Clerk is directed to terminate Defendants Speagle and Stout. Plaintiff's claim under § 1983 based on a failure-to-train theory and her claim for negligent infliction of emotional distress are dismissed. Plaintiff may proceed on her remaining claims, but may not recover punitive damages.

**SO ORDERED.**

Signed: June 4, 2021

Kenneth D. Bell
United States District Judge